UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. INGRASSIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:11CV2062 AGF |
| | ) |
| KEITH SCHAFER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Thomas Ingrassia, a civil detainee at Missouri's Sex Offender Rehabilitation and Treatment Services ("SORTS") facility, for leave to commence this action without payment of the required filing fee. Having reviewed Plaintiff's financial affidavit, the Court will grant the motion. Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

### 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a

cognizable right.  Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry.  First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009).  These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  Id. at 1949.  Second, the Court must determine whether the complaint states a plausible claim for relief.  Id. at 1950-51.  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.  The plaintiff is required to plead facts that show more than the "mere possibility of misconduct."  Id.  The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief."  Id. at 1951.  When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred.  Id. at 1950, 51-52.

**The Complaint**

Plaintiff brings this action under 42 U.S.C. § 1983 and state law.  Named as Defendants are Keith Schafer (Director, Missouri Department of Mental Health ("MDMH")), Felix Vincenz (Chief Operating Officer, Division of Comprehensive Psychiatric Services, MDMH), Julie Inman (Regional Executive Officer, MDMH), Alan Blake (Chief Operating

-2-

Officer, SORTS), Jay Englehart (Psychiatrist, SORTS), Davinder Hayreh (same), Unknown Kim (same), Perry Bramhall (same), Keith Wilkey (community surgeon), Bob Wills (Chief Nursing Executive, SORTS), Gabriel Crawford (Registered Nurse, SORTS), Joe Easter (same), Marybeth Rowe (same), Tamra Archambo (same), Susan Kraemer (same), Ron Moore (same), Penny Portel (same), Kaylynn Reed (same), Ron Scharer (same), David Easter, Sr. (Security Officer, SORTS), Eric Miller (same), Evan Miller (same), Kristina Bender (Unit Program Supervisor, SORTS), Mike Basler (Security Aide, SORTS), Gary Bennett (same), Mark Brown (same), Chris Chamberlain (same), Andrew Cole (same), Wayne Cook (same), Tony Crabtree (same), Robert Dolan (same), Eric Edgar (same), Brian Gillespie (same), Jacob Hays (same), John Hooker (same), Brian Jones (same), Kaleb Juliette (same), Linda Knox (same), Neil Koenig (same), Larry Major (same), Jeff Miller (same), Chuck Parmley (same), Rodney Rangel (same), Chris Robert (same), Darrin Sheets (same), Brian Smith (same), Connie Smith (same), Micah Stewart (same), Michah Stewart (same), Ben Thurman (same), Jason Vinson (same), Bruce Weeks (same), Brenda Swift (Facility Grievance Coordinator, SORTS), and several John Does. Defendants Schafer, Vincenz, and Inman are sued in their official capacities only. All other Defendants are sued in their official and individual capacities.

In 1979, Petitioner pled guilty to four instances of rape. See Ingrassia v. State, 103 S.W.3d 117, 118 n. 2 (Mo. Ct. App. 2002). In 1999, after Petitioner was released from prison, the State of Missouri filed a petition alleging that Petitioner met the definition of a sexually violent predator ("SVP") under Missouri's Sexually Violent Predator Act, Mo. Rev.

Stat. §§ 632.480 - 632.513.  Id.  A jury found Petitioner to be an SVP, and in 2001 the court entered an order committing Petitioner to the custody of the Missouri Department of Mental Health for treatment.  Id. at 119.

Petitioner subsequently escaped from the facility now known as SORTS.[1]  Id.  Petitioner escaped by cutting through his window, climbing two stories down to the ground on tied-together bed sheets, and cutting through three fences.  See State of Missouri's appellate brief in Ingrassia v. State, 252 S.W.3d 225, 2008 WL 1780284.  Petitioner absconded to Florida where he lived under an assumed name and got married.  Id.  A little over two years later, Petitioner was apprehended by Florida law enforcement and was returned to Missouri.  Id.

Plaintiff alleges that he ruptured a disc in his lumbar spine on May 23, 2008, at which time he was imprisoned in a Missouri Department of Corrections institution on a felony property damage conviction he received as a result of cutting through the fences surrounding SORTS.  On August 8, 2008, Plaintiff says, he was transferred to SORTS, where he was placed on "Special Precautions-Visual one-to-one" status as a result of his previous escape.  Under these conditions, Plaintiff maintains, SORTS employees maintain visual contact with him twenty-four hours per day to prevent another escape.

---

[1]Previously, the facility was called the Missouri Sexual Offender Treatment Center, or MSOTC.  For clarity, the Court will refer to the facility as SORTS throughout this opinion.

Plaintiff claims that he told SORTS officials about his back problems on arrival. According to Plaintiff, on September 4, 2008, Defendants Bennet, David Easter, Sr., and two other SORTS employees transported Plaintiff to Defendant Wilkey's clinic for a surgery consultation. Plaintiff says that shortly after he arrived Wilkey went through his file and noted that Plaintiff had been convicted of rape and had escaped from SORTS. Plaintiff asserts that Wilkey then said to him, "If you f--- with me, you're out of here." Plaintiff claims that Wilkey then performed an examination, and after he performed the examination he recommended surgery. Plaintiff says he asked Wilkey if weight lifting and range of motion therapy would help him rehabilitate after surgery, and Plaintiff maintains that Wilkey replied, "Absolutely."

Plaintiff avers that on October 22, 2008 he was transported to Wilkey's clinic for surgery. Plaintiff says Wilkey sent him back to SORTS after the surgery was complete.

Plaintiff alleges that a few days after the surgery Defendant Bennett told him that Wilkey had "manipulated the surgery to ensure that Plaintiff 'would never escape again.'"

Plaintiff says that he was taken back to Wilkey's office on November 4, 2008, for follow-up. According to Plaintiff, Wilkey told Plaintiff that he "cut out both sides of the ruptured disk, which was his explanation as to why Plaintiff's left leg was tingling, numb, weak, and painful." Plaintiff claims that Wilkey told him the tingling and numbness would go away in a few weeks. Plaintiff says he asked Wilkey if weight training would help. Plaintiff asserts that Wilkey asked Bennett if Plaintiff was allowed to use the weights, and

Bennett told Wilkey "no." Plaintiff states that Wilkey then told Plaintiff he would not order weight training because it conflicted with the rules at SORTS.

Plaintiff asserts that on November 15, 2008, Defendant Scharer was informed that Plaintiff was hiding a "small cup" of Vaseline in his sock. Scharer, says Plaintiff, then ordered that Plaintiff be held down and searched. Plaintiff says that Defendants Koenig, Basler, Gillespie, Rangel, Hooker, Evan Miller, David Easter, Sr., and Jones forced him to the ground and held him in a "spread eagle position." Plaintiff alleges that Basler held Plaintiff to the floor by placing his knee on Plaintiff's lumbar spine, directly on the surgical site. Plaintiff maintains that his back was injured during the incident. Plaintiff believes that Scharer's failure to protect him was a cause of his injury.

Plaintiff claims that he was taken to see Wilkey on December 16, 2008, because he had been complaining of pain, tingling, numbness, and weakness. Plaintiff says he complained about a protruding bone in his back, but he says Wilkey told him it was normal. Plaintiff asserts that he again asked for an order to do weight lifting for rehabilitation but that Wilkey again refused.

Plaintiff states that on December 17, 2008, he asked Defendant Bramhall for an order to do weight lifting, and he says Bramhall also refused.

Plaintiff says he was taken back to Wilkey's office on March 17, 2009. Plaintiff asserts that Wilkey told Plaintiff that there was nothing more he could do for Plaintiff's back and that Plaintiff was released with no restrictions. Plaintiff states that he asked for a weight training order again, and he says that Wilkey then asked him about his behavior problems

at SORTS. Plaintiff claims that Defendant David Easter, Sr., told Wilkey that there was a color system at SORTS, classifying residents as red, yellow, blue, or green level. David Easter, Sr., told Wilkey that Plaintiff was a red level (high risk) resident, and he told Wilkey that red level residents are not permitted to use the weights. Plaintiff alleges that Wilkey then told Plaintiff that he would not order weight training because he would not get involved with Plaintiff's behavior problems at SORTS.

Plaintiff alleges that on November 11, 2009, he was "physically attacked" by Defendants Eric Miller, Thurman, Weeks, Dolan, Vinson, Edgar, and Portel. Plaintiff says he was "dragged fifty feet down a hallway and thrown onto a bed and roughed up." Plaintiff claims that his arms, right shoulder, neck, and back were injured.

Plaintiff states that on December 29, 2009, he was walking down a hall when Defendant Knox deliberately tripped him and caused him to fall. Plaintiff avers that his back was injured as a result of the fall.

Plaintiff alleges that on April 10, 2010, he was again "physically attacked by SORTS employees." According to Plaintiff, Defendant Bender told him he would be placed in seclusion if he did not give her the bowl of grapes he had on his food tray. Plaintiff says he refused, ran to his bedroom, placed his back against the floor-bolted bed, and barricaded the door with his feet. Plaintiff maintains that he told Defendant David Easter, Sr., that he would open the door after he ate the grapes. Plaintiff says that David Easter, Sr., said, "No, you will open the door now." Plaintiff states that several SORTS employees were pushing on the door, and Plaintiff claims he resisted them so strongly that the screws holding the bed to the

floor were bent. Plaintiff asserts that Defendants David Easter, Sr., and Bennett eventually entered the room, and when they did enter they seized Plaintiff and slammed him into an oak closet and into the door jamb. Plaintiff claims that Defendants "Chris Chamberlain and Jacob Hays also attacked him and carried him to seclusion."

Plaintiff alleges that on October 8, 2010, he "was attacked by SORTS employees" Chamberlain, David Easter, Sr., and some John Doe Defendants. Plaintiff claims that Defendant Hayreh "gave the order to attack, saying 'get him.'" Plaintiff says his back was injured as a result.

Plaintiff avers that on October 10, 2010, he "was physically attacked by [Defendants Stewart, Edgar, Hays, Robert, Moore, Cole, Juliette, Brown, Crabtree], because he would not relinquish three small cookies which belonged to him." Plaintiff says that his arms were secured to his torso during the incident. According to Plaintiff he stood up on his bed, hoping to avoid the attack, when Stewart got onto the bed and threw him to the floor. Plaintiff claims he could not break the fall because his arms were restrained. Plaintiff alleges that "Defendants continued to attack Plaintiff for forty-five minutes as he lay helpless on his back in the wrists to waist restraints." Plaintiff says he was choked repeatedly. Plaintiff claims that supervisory Defendants Archambo, Unknown Kim, Kraemer, and several John Does were present at the time and failed to intervene. Plaintiff avers that he was bloodied and bruised by the attack and that he had ligature marks on his neck from being choked.

Plaintiff claims that on January 11, 2011, he "was physically attacked by SORTS employees while resting on his bed. He was carried to the seclusion room." Plaintiff asserts that the "attackers" were Defendants Wills, Major, Jeff Miller, Cook, and Sheets.

Plaintiff maintains that he got a second MRI of his lumbar spine on February 18, 2011, after he continued to complain of pain, numbness, tingling, and weakness. According to Plaintiff, he was taken to Wilkey's clinic on March 1, 2011. Plaintiff claims that Wilkey told him that he had arthritis in his spine and two bulging lumbar discs that were impinging on his nerves. Plaintiff says Wilkey told Plaintiff that he would not do any further surgeries. Plaintiff again asked for an order for weight training and was again refused.

Plaintiff alleges that on March 31, 2011, Defendant Major "jumped Plaintiff from behind and dragged him backward, throwing him into an a/c register attached to a wall, and then to the floor." Plaintiff avers that Defendant Reed was the medical supervisor and ordered Major to attack Plaintiff. Plaintiff states he was injured as a result.

Plaintiff says that on May 11, 2011, he "was jumped from behind by Chuck Parmley and thrown to the floor on his back with help from Kristina Bender, Kaylynn Reed and unknown Doe Defendants. Parmley was choking Plaintiff." Plaintiff further alleges that "Mike Basler attacked Plaintiff after he was on the floor. Basler punched Plaintiff in the face, and put his hands on Plaintiff's head and pounded it into the floor several times." Plaintiff claims he was injured as a result.

Plaintiff asserts that he filed a grievance on May 23, 2011, complaining about the assaults, Wilkey's surgery, and complaining about pain in his back. Plaintiff states that Englehart denied the grievance, telling Plaintiff that he may be delusional.

Plaintiff claims that on March 4, 2011, he sent a letter to Wilkey threatening to sue him if he did not order weight training for Plaintiff.

Plaintiff says that on October 27, 2011, he was walking to his ward when Defendants Jones and Connie Smith grabbed him "around the head and upper torso" and threw him on the floor. Plaintiff says he was injured as a result.

## Discussion

1. Federal Claims

Plaintiff's claims under the Fourteenth Amendment for excessive force by Defendants Basler, Eric Miller, Thurman, Weeks, Dolan, Vinson, Edgar, Portel, Knox, David Easter, Sr., Bennett, Stewart, Hays, Robert, Moore, Cole, Juliette, Brown, Crabtree, Archambo, Kim, Kraemer, Major, Reed, Jones, Parmley, Bender, and Connie Smith survive review under 28 U.S.C. § 1915(e). As a result, the Court will order the Clerk to cause process to issue as to these Defendants.

Plaintiff sues Defendants Schafer, Vincenz, and Inman in their official capacity only. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." Id. As a result, the complaint

fail to state a claim upon which relief can be granted as to Schafer, Vincenz, and Inman. Additionally, Plaintiff's claims against all of the other Defendants in their official capacities fails to state a claim upon which relief can be granted, and Plaintiff's official capacity claims will be dismissed.

To state a claim for unconstitutional medical mistreatment, Plaintiff must plead facts sufficient to indicate deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); see Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (applying deliberate indifference standard under the Fourteenth Amendment to pretrial detainees). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. Estelle, 429 U.S. at 106.  To show deliberate indifference, Plaintiff must allege that he suffered objectively serious medical needs and that Defendants actually knew of but disregarded those needs. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). Plaintiff has failed to show that Defendants Wilkey or Bramhall were deliberately indifferent to his medical needs. Wilkey performed surgery on Plaintiff's spine, and he conducted follow up appointments where he determined that Plaintiff's recovery was normal. Two MRIs were conducted, and Wilkey examined them and gave his diagnosis. Plaintiff's complaints that Wilkey refused to order weight training for him do not rise to the level of deliberate indifference. At most, Plaintiff has demonstrated that he disagreed with Wilkey and Bramhall's treatment of his back pain, but these allegations do not rise to the level of a constitutional violation. As a result, Plaintiff's allegations against Wilkey and Bramhall will be dismissed for failure to state a claim upon which relief can be granted.

Excessive force claims by civil detainees are "evaluated under the objective reasonableness standard usually applied to excessive-force claims brought by pretrial detainees." Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001). Under this analysis, the reasonableness of a particular use of force must be judged from the perspective of a reasonable official on the scene, rather than with the 20/20 vision of hindsight. See Hicks v. Norwood, 640 F.3d 839, 842 (8th Cir. 2011). Regarding the November 15, 2008, incident, Plaintiff's allegations against Defendants Jones, David Easter, Sr., Evan Miller, Gillespie, Hooker, Koenig, and Rangel fail to demonstrate that they acted in an objectively unreasonable manner. Plaintiff does not dispute that he was carrying contraband in his sock, necessitating the need for these officials to search his person. And his allegation that they held him on the ground in a "spread eagle position" does not show that they used excessive force during the search. In contrast, Plaintiff's allegation that Basler held Plaintiff to the floor by placing his knee directly on the site where Plaintiff had surgery does sufficiently allege an excessive force claim at this stage of the case. As a result, Plaintiff's claims regarding the November 15, 2008, incident fail to state a claim upon which relief can be granted with respect to Defendants Jones, David Easter, Sr., Evan Miller, Gillespie, Hooker, Koenig, and Rangel.

With regard to the April 10, 2010, incident, where Plaintiff barricaded himself in his room after disobeying the directive of staff, Plaintiff's claim that Defendant Chamberlain "attacked him and carried him to seclusion" is conclusory and not entitled to the presumption of truth. Plaintiff does not allege that Chamberlain hit him, pushed him, or kicked him.

Plaintiff's use of the word "attack" is conclusory.  Moreover, the Court notes that Plaintiff manipulates the use of language in his complaint to cast aspersions on Defendants and to palliate the effects of his own wrongdoing.  It appears that Plaintiff uses the word "attack" whenever he is confronted by staff about his inability to follow the rules.  Another instance of Plaintiff's misuse of language is where he claims he "took a leave of absence" from SORTS, rather than admitting that he escaped in violation of a court order.  As a result, the Court finds that this claim against Chamberlain fails to state a claim upon which relief can be granted.

Similarly, Plaintiff's allegation that on October 8, 2010, he "was attacked" by Chamberlain and David Easter, Sr., is vague and conclusory.  Plaintiff's allegation that Defendant Hayreh "gave the order to attack, saying 'get him'" is also vague and conclusory.  As a result, these allegations against Chamberlain, David Easter, Sr., and Hayreh fail to state a claim upon which relief can be granted.

Plaintiff's allegation that on January 11, 2011, he "was physically attacked by SORTS employees while resting on his bed. He was carried to the seclusion room" is similarly vague and conclusory.  As a result, these allegations against Wills, Major, Jeff Miller, Cook, and Sheets fail to state a claim upon which relief can be granted.

"Only persons who cause or participate in the [constitutional] violations are responsible.  Ruling against a [detainee] on an administrative complaint does not cause or contribute to the violation." George v. Smith, 507 F. 3d 605, 609 (7th Cir. 2007) (citations

omitted). Plaintiff's only allegation against Englehart is that he denied Plaintiff's grievances. As a result, the complaint fails to state a claim against Englehart.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege that defendant was personally involved in or directly responsible for the incidents that injured plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). In the instant action, Plaintiff has not set forth any facts indicating that Defendants Blake, Crawford, Joe Easter, Rowe, Scharer, Bryan Smith, or Swift were directly involved in or personally responsible for the alleged violations of his constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted as to these defendants.

In general, fictitious parties may not be named as defendants in a civil action. Phelps v. United States, 15 F.3d 735, 739 (8th Cir. 1994). An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable discovery. Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985). In this case, Plaintiff has failed to make specific allegations as to each John Doe Defendant such that their identities could be ascertained after reasonable discovery. These particular "John Doe" Defendants are both unidentified and indeterminate in number. This is not permissible. See Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) (suit naming "various other John Does to be named when

identified" not permissible). As a result, the complaint is legally frivolous as to the John Doe Defendants.

2. State Law Claims

Plaintiff brings claims under state law in tort and statute. Plaintiff brings tort claims for medical malpractice as well as assault and battery. And Plaintiff brings claims under Mo. Rev. Stat. § 630.115 (criminal mistreatment of a patient) and Mo. Rev. Stat. § 565.070 (third degree physical assault).

With regard to the alleged incidents dated November 15, 2008, November 11, 2009, December 29, 2009, October 10, 2010, March 31, 2011, May 11, 2011, and October 27, 2011, Plaintiff's complaint survives initial review on his assault and battery tort claims as to Defendants Basler, Eric Miller, Thurman, Weeks, Dolan, Vinson, Edgar, Portel, Knox, David Easter, Sr., Bennett, Stewart, Hays, Robert, Moore, Cole, Juliette, Brown, Crabtree, Archambo, Kim, Kraemer, Major, Reed, Jones, Parmley, Bender, and Connie Smith. With regard to the alleged incident dated April 10, 2010, Plaintiff's assault and battery claims survive initial review as to Defendants David Easter, Sr., and Bennett. As a result, defendants are directed to respond to these claims.

> Pursuant to Mo. Rev. Stat. § 538.225 a plaintiff bringing
>
> any action against a health care provider for damages for personal injury . . . shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the Defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

> . . .
>
> 5. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days.

Under the prison mailbox rule, Plaintiff filed his complaint on about November 19, 2011. The ninety day period for filing the proper affidavit with the Court expired on about February 17, 2012. As a result, the Court will dismiss Plaintiff's medical malpractice claims without prejudice. See J.K.M. v. Dempsey, 317 S.W.3d 621, 627 (Mo. Ct. App. 2010) ("trial court is required to dismiss the case if the plaintiff does not file the affidavit within the statutory time period").

Finally, Mo. Rev. Stat. § 630.115 and Mo. Rev. Stat. § 565.070 are criminal statutes and do not provide Plaintiff with a private cause of action. As a result, Plaintiff's claims under these statutes will be dismissed.

3.     Motion for Appointment of Counsel

Plaintiff moves for the appointment of counsel. After reviewing the complaint, the Court finds that the non-frivolous portions of the complaint are not so factually or legally complex as to warrant the appointment of counsel at this time.   See Johnson v. Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986). As a result, the motion will be denied without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed in forma pauperis [Doc. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for the appointment of counsel [Doc. 3] is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's official capacity claims against all defendants are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to Defendants Mike Basler, Eric Miller, Ben Thurman, Bruce Weeks, Robert Dolan, Jason Vinson, Eric Edgar, Penny Portel, Linda Knox, David Easter, Sr., Gary Bennett, Micah Stewart, Jacob Hays, Chris Robert, Ron Moore, Andrew Cole, Kaleb Juliette, Mark Brown, Tony Crabtree, Tamra Archambo, Unknown Kim (Psychiatrist), Susan Kraemer, Larry Major, Kaylynn Reed, Brian Jones, Chuck Parmley, Kristina Bender, and Connie Smith.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to Defendants Keith Schafer, Felix Vincenz, Julie Inman, Alan Blake, Jay Englehart, Davinder Hayreh, Perry Bramhall, Keith Wilkey, Bob Wills, Gabriel Crawford, Joe Easter, Marybeth Rowe, Ron Scharer, Evan Miller, Chris Chamberlain, Wayne Cook, Brian Gillespie, John Hooker, Neil Koenig, Jeff Miller, Rodney Rangel, Darrin Sheets, Bryan Smith, Brenda Swift, or the John Doe Defendants because, as to these Defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

An appropriate Order of Partial Dismissal shall accompany this Memorandum and Order.

Dated this 8th day of March, 2012.

                                                _____
                                                AUDREY G. FLEISSIG
                                                UNITED STATES DISTRICT JUDGE