UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. INGRASSIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:11CV2062 AGF |
| | ) |
| KEITH SCHAFER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Mike Basler, Ben Thurman, Robert Dolan, Jason Vinson, Eric Edgar, Penny Portel, David Easter, Sr., Gary Bennett, Micah Stewart, Jacob Hays, Chris Robert, Ron Moore, Andrew Cole, Kaleb Juliette, Mark Brown, Tony Crabtree, Tamra Archambo, Larry Major, Kaylynn Reed, Brian Jones, Chuck Parmely, Kristina Bender, and Connie Smith's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, Defendants seek to dismiss Plaintiff's state law assault and battery claims arising before November 25, 2009, and Plaintiff's claims for equitable relief based on past harm.  Additionally, Plaintiff seeks clarification regarding the status of his amended complaint and which Defendants remain in the case.  The Court will provide the clarification.

**Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-70 (2007)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556)  "Where a complaint pleads facts that are merely consistent with a Defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557) (quotation mark omitted).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry.  First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth.  Id. at 1950-51.  These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949.  Second, the Court must determine whether the complaint states a plausible claim for relief.  Id. at 1950-51.  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.  The Plaintiff is required to plead facts that show more than the "mere possibility of misconduct."  Id.  The Court must review the factual allegations

in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether Plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 1951-52.

Furthermore, because Plaintiff is proceeding in forma pauperis, the Court is required to review the complaint *sua sponte* and dismiss any portion of it that is frivolous, malicious, or fails to state a plausible claim for relief.

**The Amended Complaint**

Plaintiff is a civil detainee at Missouri's Sexual Offender Rehabilitation Treatment Center ("SORTS"). The complaint names forty-four Defendants, forty-three of whom are or were employed by the Missouri Department of Mental Health (the "Department") at SORTS. Defendant Jay Englehart is a psychiatrist and is the Medical Director of SORTS. Defendants Davinder Hayreh and Unknown Kim are or were psychiatrists at SORTS. Defendant Keith Wilkey is an outside orthopedist who operated on Plaintiff's lumbar spine pursuant to a contract with the Department. Defendants Tamra Archambo, Gabriel Crawford, Lora Eckhert, Susan Kraemer, Ron Moore, Penny Portel, Kathlynn Reed, Mary Beth Rowe, Ron Scharer, and Susan Zenthoefer are or were registered nurses at SORTS. Defendant Kristine Bender is or was a Unit Program Supervisor. Defendants David Easter and Eric Miller are or were security officers. And Defendants Mike Basler, Gary Bennett, Mark Brown, Chris Chamberlain, Andrew Cole, Tony Crabtree, Robert Dolan, Eric Edgar, Brian Gillespie, Jacob Hayes, John Hooker, Brian Jones, Kaleb Juliette, Linda Knox, Neil

Koenig, Larry Major, Chuck Parmley, Rodney Rangel, Chris Robert, Darren Sheets, Bryan Smith, Connie Smith, Micah Stewart, Angela Stump, Ben Thurman, Jason Vinson, and Bruce Weeks are or were security aides at SORTS.  Plaintiff sues Defendants in their individual capacities.

In 1979, Plaintiff pled guilty to four instances of rape.  See Ingrassia v. State, 103 S.W.3d 117, 118 n. 2 (Mo. Ct. App. 2002).  In 1999, after Plaintiff was released from prison, the State of Missouri filed a petition alleging that Plaintiff met the definition of a sexually violent predator ("SVP") under Missouri's Sexually Violent Predator Act, Mo. Rev. Stat. §§ 632.480 - 632.513.  Id.  A jury found Plaintiff to be an SVP, and in 2001 the court entered an order committing Plaintiff to the custody of the Missouri Department of Mental Health for treatment.  Id. at 119.

Plaintiff subsequently escaped from the facility now known as SORTS.[1]  Id.  Plaintiff escaped by cutting through his window, climbing two stories down to the ground on tied-together bed sheets, and cutting through three fences.  See State of Missouri's appellate brief in Ingrassia v. State, 252 S.W.3d 225, 2008 WL 1780284.  Plaintiff absconded to Florida where he lived under an assumed name and got married.  Id.  A little over two years later, Plaintiff was apprehended by Florida law enforcement and was returned to Missouri.  Id.

---

[1]Previously, the facility was called the Missouri Sexual Offender Treatment Center, or MSOTC.  For clarity, the Court will refer to the facility as SORTS throughout this opinion.

Plaintiff alleges that he ruptured a disc in his lumbar spine on May 23, 2008, at which time he was imprisoned in a Missouri Department of Corrections institution on a felony property damage conviction he received as a result of cutting through the fences surrounding SORTS. On August 8, 2008, Plaintiff says, he was transferred to SORTS, where he was placed on "Special Precautions-Visual one-to-one" status as a result of his previous escape. Under these conditions, Plaintiff maintains, SORTS employees maintain visual contact with him twenty-four hours per day to prevent another escape.

Plaintiff claims that he told SORTS officials about his back problems on arrival. According to Plaintiff, on September 4, 2008, Defendants Bennett, David Easter, Sr., and two other SORTS employees transported Plaintiff to Defendant Wilkey's clinic for a surgery consultation. Plaintiff says that shortly after he arrived Wilkey went through his file and noted that Plaintiff had been convicted of rape and had escaped from SORTS. Plaintiff asserts that Wilkey then said to him, "If you f--- with me, you're out of here." Plaintiff claims that Wilkey then performed an examination, and after he performed the examination he recommended surgery. Plaintiff says he asked Wilkey if weight lifting and range of motion therapy would help him rehabilitate after surgery, and Plaintiff maintains that Wilkey replied, "Absolutely."

Plaintiff avers that on October 22, 2008 he was transported to Wilkey's clinic for surgery. Plaintiff says Wilkey sent him back to SORTS after the surgery was complete.

After the surgery, Plaintiff asked Wilkey to write an order for weight lifting, which Plaintiff believes was necessary for his recovery. After speaking with Defendant Bennett,

who told Wilkey Plaintiff was not allowed to lift weights because of his Special Precautions status, Wilkey refused to write an order for weight lifting.

Plaintiff asserts that on November 15, 2008, Smith told Scharer that Plaintiff had hid a cup of Vaseline in his sock.  Plaintiff claims that Scharer then ordered Koenig, Basler, Gillespie, Rangel, Hooker, and Jones to put Plaintiff "on the floor."  Plaintiff says that Defendants took him to the floor, injuring his back, although they were aware that he had back surgery only twenty-four days before and that his back was likely to be injured if stressed.  Plaintiff avers that Basler purposely put his knee on Plaintiff's back directly on the surgery site.  Plaintiff maintains that Smith lied to Scharer about the Vaseline, intending that Plaintiff be injured.  Plaintiff asserts that possession of Vaseline is a minor infraction that does not warrant being forced to the floor and searched under Missouri law.

Plaintiff claims that he was taken to see Wilkey on December 16, 2008, because he had been complaining of pain, tingling, numbness, and weakness.  Plaintiff says he complained about a protruding bone in his back, but he says Wilkey told him it was normal.  Plaintiff asserts that he again asked for an order to do weight lifting for rehabilitation but that Wilkey again refused.

Plaintiff avers that in January 2009 Wilkey ordered an MRI of Plaintiff's back.  Plaintiff had the MRI on February 18, 2009.  On March 17, 2011, Wilkey told Plaintiff he had done all he could for Plaintiff's back and that Plaintiff was released without restrictions.  Wilkey again refused to write an order for weight lifting.  Wilkey told Plaintiff he was not going to get involved with Plaintiff's behavioral problems at SORTS.

Plaintiff alleges that on November 11, 2009, he was "physically attacked" by Defendants Eric Miller, Thurman, Weeks, Dolan, Vinson, Edgar, and Portel. Plaintiff says he was "dragged fifty feet down a hallway, thrown onto a bed, and roughed up." Plaintiff claims that his arms, right shoulder, neck, and back were injured.

Plaintiff states that on December 29, 2009, he was walking down a hall when Defendant Knox deliberately tripped him and caused him to fall. Plaintiff avers that his back was injured as a result of the fall.

Plaintiff alleges that Englehart ordered the use of physical restraint on Plaintiff, which caused his back to be injured. Plaintiff further alleges that Englehart denied his grievances, saying that his grievances were manufactured because of his anti-social and narcissistic thinking.

Plaintiff alleges that on April 20, 2010, he was again "physically attacked by SORTS employees." According to Plaintiff, Defendant Bender told him he would be placed in seclusion if he did not give her the bowl of grapes he had on his food tray. Plaintiff says he refused, ran to his bedroom, placed his back against the floor-bolted bed, and barricaded the door with his feet. Plaintiff maintains that he told Defendant David Easter, Sr., that he would open the door after he ate the grapes. Plaintiff says that David Easter, Sr., said, "No, you will open the door now." Plaintiff states that several SORTS employees were pushing on the door, and Plaintiff claims he resisted them so strongly that the screws holding the bed to the floor were bent. Plaintiff asserts that once he stopped barricading his door, Easter and

Bennett grabbed his arms and slammed him into an oak closet and then carried him to seclusion.

Plaintiff says he requested medical care after the April 20, 2010, incident from Englehart. Plaintiff maintains that he did not receive any treatment or care until February 18, 2011, when he had another MRI. Plaintiff claims that he has permanent nerve damage as a result of the lack of treatment.

Plaintiff states that on October 8, 2010, he stated, "If someone abuses me, I will stand up for myself." Plaintiff claims that Stump heard the comment and interpreted it as a threat to staff. Stump then ordered Plaintiff to go to seclusion. Plaintiff refused the order, so Hayreh called a "Code 10," which means that all available staff must respond to the perceived threat. Plaintiff asserts that he told Hayreh he did not mean the comment as a threat, but only that he would stand up for himself orally and file a grievance if he was abused. Regardless, Hayreh told the Code 10 responders to take Plaintiff to seclusion. Upon hearing the order, Plaintiff ran to his bedroom and got on the top bunk bed. Plaintiff then locked his legs and feet around the steel frame of the bed in an attempt to prevent the responders from taking him to seclusion. Plaintiff alleges that Sheets and Chamberlain took Plaintiff around the arms and chest and pulled on him in an attempt to dislodge him from the bed, while Easter attempted to dislodge his legs. Plaintiff says he was injured during the incident. Plaintiff was then taken to seclusion. Plaintiff believes the use of force was unjustified because he did not represent a physical threat to SORTS staff.

Plaintiff avers that on October 10, 2010, he "was physically attacked by [Defendants Stewart, Edgar, Hays, Robert, Moore, Cole, Juliette, Brown, Crabtree], because he would not relinquish three small cookies which belonged to him." Plaintiff says that his arms were secured to his torso during the incident. According to Plaintiff he stood up on his bed, hoping to avoid the attack, when Stewart got onto the bed and threw him to the floor. Plaintiff claims he could not break the fall because his arms were restrained. Plaintiff alleges that "Defendants continued to attack Plaintiff for forty-five minutes as he lay helpless on his back in the wrists to waist restraints." Plaintiff says he was choked repeatedly. Plaintiff claims that supervisory Defendants Archambo, Crawford, Eckhert, Kim, Kraemer, and Zenthoefer were present at the time and failed to intervene. Plaintiff avers that he was bloodied and bruised by the attack and that he had ligature marks on his neck from being choked.

Plaintiff underwent an MRI on February 18, 2011. On March 1, 2011, Plaintiff saw Wilkey because he had been complaining of pain, tingling, numbness, and weakness in his back, legs, and feet. The MRI showed arthritis in Plaintiff's back as well as "two bulges in his lumbar disks which were impinging on his nerves." Wilkey told Plaintiff that he would not perform another surgery. Plaintiff asked Wilkey again for an order to do weight lifting, which Wilkey refused.

Plaintiff alleges that on March 31, 2011, Defendant Major "jumped Plaintiff from behind and dragged him backward, throwing him into an a/c register attached to a wall, and

then to the floor." Plaintiff avers that Defendant Reed was the medical supervisor and ordered Major to attack Plaintiff. Plaintiff states he was injured as a result.

Plaintiff says that on May 11, 2011, he "was jumped from behind by Chuck Parmley and thrown to the floor on his back with help from Kristina Bender and Kaylynn Reed. Parmley was on top of Plaintiff choking him around the neck with at least one hand." Plaintiff further alleges that Basler attacked him after he was on the floor, alleging that Basler punched him in the face and pounded his head on the floor several times. Plaintiff claims he was injured as a result.

Plaintiff says that on October 27, 2011, he was walking to his ward when Defendants Jones and Connie Smith grabbed him "around the head and upper torso" and threw him on the floor. Plaintiff says he was injured as a result.

Plaintiff alleges, "SORTS medical staff have attempted to alleviate Plaintiff's symptoms of pain, but remain unsuccessful."

Plaintiff brings one count for denial of medical care in violation of the Fourteenth Amendment, one count against the supervisory personnel for ordering physical assaults or failing to prevent them, and one count for physical abuse under § 1983 and state law for assault and battery.

**Discussion**

The Court finds that the amended complaint states a plausible claim for relief against Defendants Englehart, Kim, Archambo, Crawford, Eckhert, Kraemer, Moore, Portel, Reed, Scharer, Zenthoefer, Easter, Miller, Bender, Basler, Bennett, Brown, Chamberlain, Cole, Crabtree, Dolan, Edgar, Gillespie, Hays, Hooker, Jones, Juliette, Koenig, Major, Parmley, Rangel, Robert, Bryan Smith, Connie Smith, Stewart, Thurman, Vinson,  and Weeks.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where Plaintiff fails to allege that Defendant was personally involved in or directly responsible for the incidents that injured Plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).  In the instant action, Plaintiff has not set forth any facts indicating that Defendants Hayreh, Rowe, Knox, Sheets, or Stump were directly involved in or personally responsible for the alleged violations of his constitutional rights.  As a result, the complaint fails to state a claim upon which relief can be granted as to these Defendants.

To state a claim for unconstitutional medical mistreatment, Plaintiff must plead facts sufficient to indicate deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Camberos v. Branstad, 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. Estelle, 429 U.S. at 106.  To show deliberate indifference, Plaintiff must allege that

he suffered objectively serious medical needs and that Defendants actually knew of but disregarded those needs.  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). Plaintiff's claims against Wilkey do not show deliberate indifference.  Wilkey performed surgery on Plaintiff's spine and followed up with him on several occasions.  Plaintiff's main disagreement with Wilkey is that Wilkey refused to order weight lifting.  This fails to state a plausible claim under the Constitution.  Plaintiff's allegations regarding Wilkey demonstrate that Plaintiff disagreed with Wilkey's post-operative plaint; they do not show that Wilkey disregarded Plaintiff's objectively serious medical needs.  As a result, the complaint fails to state a claim against Wilkey.

Missouri has a two-year statute of limitations on assault and battery claims.  Mo. Rev. Stat. § 516.140.  As a result, Plaintiff's assault and battery claims that occurred before November 25, 2009, are time-barred and will be dismissed.

In his complaint, Plaintiff seeks an order enjoining the Defendants from manually restraining him.  Defendants argue that Plaintiff's claims for prospective relief should be dismissed because Plaintiff has failed to show the likelihood of future harm.  Plaintiff argues that the allegations show a pattern and practice of abuse that will likely continue in the future if Defendants' actions are unchecked by the Court.  The Court finds that Plaintiff's allegations are sufficient at this point of the litigation to withstand the motion to dismiss on this ground.  As a result, the motion to dismiss will be denied in part.

Finally, the Court notes that process has not been served as to several of the Defendants that the Court previously found to be properly included in the case, because these

Defendants are no longer employed by the Department and the Department will not provide the home addresses of its former employees to SORTS residents. The Court will, therefore, order the Department to submit the last known home addresses of these Defendants to the Court *in camera*. Additionally, the Court did not previously order that Defendants Englehart, Crawford, Eckhert, Scharer, Zenthoefer, Chamberlain, Gillespie, Hooker, Koenig, Rangel, or Bryan Smith be served with process. As a result, the Court will order the Clerk to serve process as to these Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss [Doc. 20] is **GRANTED** in part and **DENIED** in part. Plaintiff's state law assault and battery claims predating November 25, 2009, are **DISMISSED**. In all other respects, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for clarification [Doc. 23] is **MOOT**.

**IT IS FURTHER ORDERED** that the Clerk shall serve process or cause process to issue on Defendants Englehart, Crawford, Eckhert, Scharer, Zenthoefer, Chamberlain, Gillespie, Hooker, Koenig, Rangel, and Bryan Smith.

**IT IS FURTHER ORDERED** that Defendants Hayreh, Wilkey, Rowe, Knox, Sheets, and Stump are **DISMISSED** from the complaint without prejudice pursuant to 28 U.S.C. § 1915(e).

**IT IS FURTHER ORDERED** that counsel for the Defendants in this matter shall inform the Court in writing, and *in camera*, within ten (10) days of the date of this order of any known addresses for Defendants Eric Miller, Bruce Weeks, Linda Knox, Unknown Kim, and Susan Kraemer, who are no longer employed by the Department. The response should be mailed directly to chambers at the Thomas F. Eagleton Federal Courthouse, 111 S. 10th St., Suite 12.182, St. Louis, MO 63102.

An Order of Partial Dismissal will be filed with this Memorandum and Order.

Dated this 24th day of September, 2012.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE