UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

THOMAS INGRASSIA,                    )
                                     )
                Plaintiff,           )
                                     )
        vs.                          )        Case No.   4:11CV02062 AGF
                                     )
KEITH SCHAFER, et al.,               )
                                     )
                Defendants.          )

## MEMORANDUM AND ORDER

Plaintiff brought this action *pro se* under 42 U.S.C. § 1983 and Missouri state law
alleging violations of his constitutional rights and assault and battery by numerous
defendants employed at Missouri's Sex Offender Rehabilitation and Treatment Services
("SORTS") facility[1] and the Missouri Department of Mental Health.   This matter is
before the Court on the joint motion for summary judgment (Doc. No. 83) filed by the 35
individually named Defendants, all employed at SORTS.   For the reasons set forth below,
Defendants' motion will be granted in part and denied in part.

## BACKGROUND

In 1979, Plaintiff pled guilty to four instances of rape.   In 1999, upon his release
from prison, the State of Missouri filed a petition alleging that Plaintiff met the definition
of a sexually violent predator ("SVP") under Missouri's Sexually Violent Predator Act.   A
jury found Plaintiff to be an SVP, and in 2001 the court entered an order committing

---

[1]    Previously, the facility was called the Missouri Sexual Offender Treatment Center, or
MSOTC, and is referred to as such in various documents in the record.   For clarity, the
Court will refer to the facility as SORTS.

Plaintiff to the custody of the Missouri Department of Mental Health for treatment at SORTS.

In October 2001, Plaintiff escaped from SORTS by cutting through his window, climbing two stories down to the ground on tied-together bed sheets, and cutting through three fences. Plaintiff absconded to Florida and, approximately two years later, was apprehended by Florida law enforcement and returned to Missouri. Plaintiff was held in jail until February 2005 when he was convicted of felony property damage as a result of cutting through the fences surrounding SORTS.

Plaintiff ruptured a disc in his lumbar spine on May 23, 2008, while incarcerated on the felony conviction. On August 8, 2008, Plaintiff was transferred back to SORTS, where he was placed on special precautions, including one-to-one visual observation 24 hours per day and total ward restriction (until December 2011). Plaintiff informed SORTS officials about his back problems on arrival. On October 28, 2008, Plaintiff had out-patient surgery to repair the ruptured disc. In March 2010, in order to address Plaintiff's escape and disorderly conduct, Defendant Dr. Jay Englehart (Plaintiff's treating psychiatrist) along with other SORTS medical staff put in place a behavioral plan to direct staff how to respond to Plaintiff's outbursts.

Plaintiff alleges in his amended complaint that on nine occasions (November 15, 2008, November 11, 2009, December 29, 2009, April 20, 2010, October 8, 2010, October 10, 2010, March 31, 2011, May 11, 2011, and October 27, 2011), Defendants used excessive force in physically restraining Plaintiff or failing to prevent others from doing so, and that these actions caused pain, injuries, and re-injury to his back. He further alleges

that he was denied use of SORTS weight lifting equipment which he needed in order to fully rehabilitate his back condition, and was denied a timely MRI to assess the condition of his back.

Plaintiff's amended complaint asserts three federal counts and one supplemental state count. Count I asserts a claim of deliberate indifference to Plaintiff's serious medical needs as a result of the denial of adequate medical care for his back. The only remaining Defendant in Count I is Jay Englehart, Medical Director of SORTS.[2] Count II asserts claims of failure to protect from an excessive risk of substantial harm to Plaintiff's health and safety as a result of Defendants ordering, or failing to prevent others from performing, physical restraints on Plaintiff which he contends amounted to the use of excessive force. There are nine remaining Defendants in Count II. Count III asserts claims of excessive use of force as a result of Defendants personally performing physical restraints or otherwise physically attacking Plaintiff in nine separate incidents, as set forth below. There are 28 remaining Defendants in Count III. Plaintiff also asserts a supplemental claim based on state law against all Count III Defendants claiming the actions alleged in Count III constituted assault and battery under Missouri law.[3]

_____

[2] The two other Defendants named in this count, Dr. Davinder Hayreh and Dr. Keith Wilkey, have been previously dismissed from this action.

[3] Plaintiff's amended complaint initially named 44 Defendants. Plaintiff's state law claims of assault and battery that occurred prior to September 29, 2009, were dismissed as time-barred pursuant to Missouri's two-year statute of limitations. (Doc. No. 29 at 12-13.) Five Defendants were dismissed pursuant to 28 U.S.C. § 1915(e) as frivolous and four additional Defendants were dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to properly serve. (Docs. No. 30 and 62.)

**November 15, 2008 Incident**

Defendant Smith ordered a pat down search of Plaintiff in order to locate a small cup of Vaseline he thought Plaintiff had. When Plaintiff refused the search, Defendants Basler and Koenig were called, lifted Plaintiff off the floor by his limbs and placed him on the floor. It is undisputed that Ron Scharer, a medical provider at SORTS was present, as were Defendants Hooker, Gillespie, Easter, and Jones. According to Defendants, Scharer was present "to oversee the restraint." (Doc. No. 84 at 7.) This incident occurred 23 days after Plaintiff's surgery for his ruptured lumbar disc and four months before he received a "medical release" from a SORTS medical provider.

According to Plaintiff, Scharer was the one who told the other Defendants to put Plaintiff on the floor, and while he was held on the floor by other Defendants who were present, Basler placed his knee at the site of Plaintiff's surgery. By deposition, Plaintiff testified that he was screaming, "You're hurting me! You're hurting me!" and that when he was allowed to get up he heard Scharer say to the other Defendants present "You guys heard me say don't hurt him didn't you?" (Doc. No. 84-3 at 1.) No Vaseline was found.

Plaintiff alleges that he suffered back and hip pain and that his "back was injured and the surgery comprised." (Doc No. 100 at 12-13.) Plaintiff argues that the force used was excessive in relation to the need as there was "no need to manually restrain him to the floor over a non-dangerous item that did not exist." (Doc. No. 100 at 13.) In connection with his allegations of another challenged incident, Plaintiff asserts that in approximately September 2009 he was examined by a SORTS doctor because a "bone was sticking out of Plaintiff's back" as a result of the November 15 altercation. (Doc. No. 100 at 14.)

Defendants assert that Plaintiff was assessed by a nurse and the only noted injury 24 hours after the incident was a "small, old bruise on his thigh that had already turned lavender." (Doc. No. 84 at 22.) Defendants further note that at a follow-up appointment with Dr. Keith Wilkey, Plaintiff's outside treating orthopedic surgeon, on December 18, 2008, Dr. Wilkey stated that Plaintiff's back condition had "improved." *Id*. Defendants argue that this claim fails because "Plaintiff's lack of injuries shows he faced no objectively serious harm and reasonable force was used." *Id.*

Defendants assert that Plaintiff testified that he could not identify any conduct of Gillespie, Hooker, Easter, and Jones with regard to this incident and that therefore the Court should grant them summary judgment. Plaintiff, however, testified that Hooker was "on my right shoulder." (Doc. No. 84-3 at 2-3.) Plaintiff could not identify where each Defendant who was present might have touched him. Easter attested by affidavit that he was called to Plaintiff's cell but arrived after Plaintiff was restrained.

## November 11, 2009

Plaintiff alleges that on this date, SORTS employees asked that he submit to a random pat down search, just one day after they had conducted such a search, knowing that he had no contraband on his person. When he refused, Defendant Portel, a SORTS supervisor, called Dr. Englehart who ordered a manual restraint. Plaintiff alleges that six Defendants then "attacked him" and dragged him 60 feet to a seclusion room and threw him onto a bed. Defendants then did a "mock pat search" and let him go. Plaintiff asserts that his "attackers" were Defendants Miller, Thurman, Weeks, Dolan, Vinson, and Edgar.

Plaintiff asserts that he sustained injuries to his arms, wrists, shoulder, neck, and

back.   Plaintiff claims that since he was on 24 hour observation and total ward restriction, there was no need for the search other than to harass him and that, therefore, the force used was excessive.

Defendants assert that Plaintiff was "escorted" to the seclusion room and struggled the entire way, making it difficult for the six SORTS employees to move him 60 feet. Defendants state that Plaintiff was held down on the bed in the seclusion room until he calmed down.   Plaintiff was then released and allowed to exit seclusion after complying with the search.   Defendants assert "Plaintiff had no identifiable injury as a result of the restraint."   (Doc. No. 100 at 8.)

Defendants argue that "the lack of evidence of even a *de minimis* injury show[s] that the force was reasonable."   Defendants assert that in his deposition, Plaintiff could not identify the specific conduct of each Defendant involved in this incident and that they are therefore all entitled to summary judgment.

**December 29, 2009**

Plaintiff alleges that as he was walking down a hallway, Defendant Knox, who knew he had a pre-existing back condition, deliberately stretched her legs across the hallway to intentionally trip him.   Plaintiff claims that he tripped over Knox's legs, reinjuring his back and sustaining pain from other injuries.   Defendants assert that this incident was an accident and that his lack of any injury defeats a claim of excessive force.

**April 20, 2010**

On this date, Plaintiff refused to give up grapes that the SORTS staff determined were contaminated.   Plaintiff went to his room with the grapes and shut the door.

Plaintiff held the door shut with his feet lodged against it and refused to follow Defendants Easter and Bennett's direction to open the door. Plaintiff alleges that when Easter and Bennett tried to force the door open, he told them that they were hurting his back but they continued in their efforts. After Plaintiff opened the door, Easter and Bennett entered the room and according to Plaintiff, they "assaulted him by slamming him into a locker." (Doc. No. 100 at 19.) Plaintiff asserts that under the circumstances, Defendants' actions constituted excessive force.

Defendants argue that Easter and Bennett are entitled to summary judgment as the force was reasonable under the circumstances to secure and restrain Plaintiff during his outburst and was only used after Plaintiff barricaded himself in his room. Defendants claim that the force used was reasonable because Plaintiff managed to keep the door closed for approximately five minutes. Defendants claim that after entering the room, Plaintiff was taken to seclusion. Defendants further assert that Plaintiff did not display any injury after the incident. Additionally, Defendants claim that SORTS medical personnel were present throughout the incident and that Plaintiff did not request any medical treatment. Defendants further argue that Defendant Bender is entitled to summary judgment on Plaintiff's failure to intervene claim as he has failed to establish his excessive force claim.

## October 8, 2010

On this date, Plaintiff made a statement that he would "[s]tand up for himself if abused." (Doc. No. 100 at 20.) This was taken as a threat and Plaintiff was told to walk himself to seclusion. Plaintiff refused and instead went back to his room where he held onto the frame of his bed to prevent Defendants from taking him to seclusion. Defendants

Easter, Chamberlain, and another SORTS employee used force to dislodge Plaintiff from the bed, and took him to seclusion. Plaintiff alleges that he sustained pain and injury as a result of the force used to dislodge him from the bed.

Defendants assert that the amount of force used to dislodge Plaintiff from his bed was reasonable under the circumstances. Defendants further assert that Plaintiff sustained no actionable injury.

## October 10, 2010

Plaintiff was in "hand-to-waist" restraints when he was told to go to seclusion. Instead of going straight to the seclusion room, he went to his room and grabbed some cookies, and then walked to the seclusion room and stepped onto the bed. An altercation ensued between Plaintiff and numerous Defendants that lasted for 15 minutes and during which, Plaintiff asserts, Defendants pulled him to the floor and choked him, strangled him, and pressed on his chest to obstruct his breathing. Plaintiff claims that he sustained injuries to his back and other injuries. Plaintiff asserts that the "attackers" were Defendants Stewart, Edgar, Hays, Robert, Moore, Cole, Juliette, Brown, and Crabtree. He also asserts that several medical supervisors (Defendants Archambo, Crawford, Eckhert, Kim, and Kraemer) stood by and watched for about ten minutes of the attack, and that Plaintiff pleaded with them to "make the attackers stop."

According to Defendants, Plaintiff "assaulted" Hays after Plaintiff took the cookies, and that was the reason they followed him to the seclusion room and exerted the force they did. Defendants assert that Plaintiff was seen later that day jogging and pacing in the seclusion room, and the only injuries Plaintiff sustained were some minor abrasions.

**March 31, 2011**

Plaintiff asserts that Defendant Reed, a SORTS supervisor, was talking to another resident about Plaintiff and that Plaintiff confronted her because he believed this was a violation of SORTS policy. Plaintiff states that Reed became threatening, told Plaintiff to go to seclusion, and began waving a TV remote control in Plaintiff's face. Plaintiff asserts that when Reed put the remote down, he picked it up and attempted to throw it against the wall to break it, at which point Defendant Major jumped him from behind and threw him backwards onto a wall register and then onto the floor. Plaintiff asserts he did not lunge at or assault Reed. He asserts that his back, shoulder, and elbow were injured.

Plaintiff argues that he was upset and trying to throw a remote against a wall which did not justify the use of force against him. He argues therefore, that the restraint was excessive because it was unnecessary and unreasonable, and that Reed should have intervened to prevent the assault by Major.

Defendants assert that Plaintiff lunged at Reed and that Major had to physically prevent Plaintiff from assaulting her. Defendants state that Major pulled Plaintiff away from Reed and both men fell backwards onto the register and to the ground. According to Defendants, Major held Plaintiff down until Plaintiff calmed down. Defendants further state that Plaintiff received medical attention for the minor scrapes he received.

Defendants argue that Major only used force after Plaintiff became aggressive with Reed. They argue that it appeared that Plaintiff was going to assault Reed, that Major had a justifiable purpose to intervene, and that the force was reasonably necessary for the security and to maintain order. Further, they argue the force used was brief, lasting less

than a minute, and that Plaintiff walked himself to seclusion. Defendants state that Plaintiff's only injury was a scrape on his elbow and that this *de minimis* injury shows that the force was not excessive. Defendants argue that Reed cannot be liable for a failure to intervene where Major had to prevent Plaintiff from assaulting Reed.

## May 11, 2011

After Plaintiff went behind the nurses' station, an area out of bounds for residents, attempting to steal a computer accessory, Defendants Basler, Parmley, Reed, and Bender, believing Plaintiff was attempting to assault Reed, accosted Plaintiff. According to Plaintiff, these Defendants forced Plaintiff to the floor, choked him, punched him in the face, and pounded his head repeatedly against the floor, whereupon they carried him to the seclusion room. According to Defendants, the altercation lasted three minutes, after which Parmley had a bite mark on his arm and he and Reed had to go to the emergency room for x-rays. They argue that no excessive force was used under the circumstances, as they only used force necessary to secure the area.

## October 27, 2011

Plaintiff alleges that he was assaulted by Defendant Jones when Jones blocked his walking path and Plaintiff pushed Jones out of the way. According to Plaintiff, Jones grabbed him around the torso and neck in a "martial arts hold" and threw him through a closed door, and then held him to the floor with help from Defendant Smith (Plaintiff's one-on-one observer). Plaintiff asserts that his back was injured and the nerves in his back were damaged, causing him to be unable to have a bowel movement for months afterward.

Defendants' version of this incident is that when Jones was in Plaintiff's path in the hallway, Plaintiff "tackled" Jones and pushed him out of the hallway and into a side room, and Jones only grabbed Plaintiff in response to control the situation. Defendants assert that Plaintiff testified that Smith did not use any force against him and that to the extent Plaintiff asserts a failure to protect claim with regard to this incident, that claim fails as there was no unjustified excessive force exerted. However, Plaintiff's deposition testimony states that Smith ran up during Plaintiff's confrontation with Jones and held his legs while Jones was trying to choke him.

## Failure to Provide Adequate Medical Care

Plaintiff argues that on three occasions (February 1, 2010, June 1, 2010, and May 23, 2011) he "informed Defendants through medical requests, grievances, and in person, that his back was causing pain, weakness, numbness and tingling in his legs and feet" as a result of incidents described above and requested medical care and an MRI. (Doc. No. 100 at 6.) He argues that he walks with obvious difficulty in a slumped over position. He argues that Englehart minimized and neglected his complaints, and that Englehart's failure to take his claims seriously and provide him treatment constitutes deliberate indifference to a serious medical need in violation of his constitutional rights.

Defendants point to a response to Plaintiff's February 1, 2010 grievance by an official with the Missouri Department of Mental Health stating that Plaintiff's consistent weight bearing exercises and other physical activities undertaken without the appearance of pain indicated that an MRI was not needed. (Doc. No. 86 at 22.) Further, Defendants argue any of Plaintiff's medical needs were not deliberately ignored as he had access to

doctors at SORTS who found no serious medical needs after assessing Plaintiff. Further, Defendants assert that Plaintiff's request for an MRI was not ignored as he received an MRI in February 2011 and again in February 2012, which, according to Defendants, confirmed Englehart's belief that Plaintiff had no objective need for additional treatment.

## DISCUSSION

### Summary Judgment Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once discharged, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 247. The non-moving party may not rest on the allegations or denials of his pleadings. *Anderson*, 477 U.S. at 256. However, a "plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment…and a complaint signed and dated as true under penalty of perjury

satisfies the requirements of a verified complaint." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* at 249.

## Federal Law Claims

### Denial of Medical Care for Plaintiff's Back Condition

Deliberate indifference, as applied to prisoners under the Eighth Amendment, is the appropriate standard under the Due Process Clause of the Fourteenth Amendment for determining whether a denial of medical care for a SORTS detainee is a constitutional violation. *Ingrassia v. Sheets*, No. 4:11-CV-2033, 2013 WL 3212590, at *3 (E.D. Mo. June 26, 2013). To show deliberate indifference, a SORTS detainee must first prove that he suffered objectively serious medical needs, and second, that Defendants actually knew of but unreasonably disregarded those needs. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (prisoner case). Objectively serious medical needs "must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995) (prisoner case). The plaintiff must further prove the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Finally, the plaintiff "must show more than negligence, more even than gross negligence, and mere disagreement with treatment

decisions does not rise to the level of a constitutional violation." *Alberson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006) (citation omitted) (prisoner case).

The fact that Plaintiff engaged in extensive weight bearing activities as well as other physical activities would indicate that Plaintiff was not suffering from a serious objective medical need with respect to his back condition. Further, there is no evidence of a medical diagnosis indicating an ongoing serious medical need. The record demonstrates that Plaintiff had access to SORTS medical personnel after each incident of alleged excessive force and had several follow-ups with his treating physician, Dr. Wilkey, who did not indicate a serious medical need that was not addressed.

Moreover, Plaintiff was provided with an MRI in February 2011 after which Dr. Wilkey did not recommend any additional treatment or surgery. In addition, Plaintiff received an MRI in February 2012. The fact that Plaintiff disagrees with medical treatment decisions of Englehart (or other SORTS medical providers) does not give rise to a constitutional violation. *See Alberson*, 458 F.3d at 765; *Prosser v. Nagaldinne*, 927 F. Supp. 2d 708, 732 (E.D. Mo. 2013) (granting summary judgment to the defendant where the plaintiff disagreed with the defendant's decision not to order an additional MRI). Therefore, summary judgment will be granted to Englehart as to Count I.[4]

---

4    The claim in Count I regarding permission to use SORTS weight-lifting equipment involves Defendants previously dismissed from the action. In any event, the Court believes that any Defendant involved would be entitled to summary judgment as to this claim.

Defendants argue that civilly committed sexual offenders are afforded the same constitutional protections under the Fourteenth Amendment as prisoners under the Eighth Amendment, and that in order to establish an Eighth Amendment violation, Plaintiff must show that the deprivation of rights was objectively serious; that Defendants had a sufficiently culpable state of mind, namely that they acted maliciously and sadistically for the very purpose of causing harm and not in a good faith effort to maintain or restore discipline; and that there is a causal connection between Defendants' conduct and the deprivation of rights.

The Eighth Circuit, however, has stated that "[t]he Eighth Amendment excessive-force standard provides too little protection to a person whom the state is not allowed to punish" such as pre-trial detainees or civilly committed sexual offenders. *Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001). Thus, excessive force claims by civil detainees such as Plaintiff are "evaluated under the (Fourth Amendment) objective reasonableness standard usually applied to excessive-force claims brought by pretrial detainees." *Id.; see also Rushing v. Simpson*, No. 4:08CV1338 CDP, 2009 WL 4825196, at *5-6 (E.D. Mo. Dec. 11, 2009) (SORTS detainee case). "Under this standard, the use of force must be necessary to achieve a legitimate institutional interest, such as safety, security, or efficiency." *Rushing*, 2009 WL 4825196, at *6 (citation omitted). "The amount of force used must not be in excess of that reasonably believed necessary to achieve those goals." *Id.* The relevant inquiry is whether the officials behaved in a

reasonable way in light of the facts and circumstances confronting them.  *Id.* (citation omitted).   In determining whether force was reasonable the Court must consider:

> (1) whether there was a need for the application of force; (2) the relationship between any such need and the amount of force used; (3) the extent of any injury inflicted; (4) whether the force was used for punishment or instead to achieve a legitimate purpose such as maintaining order or security; and (5) whether a reasonable officer on the scene would have used such force under similar circumstances.

*Id.* (citation omitted).  *See also Andrews*, 253 F.3d at 1061 (applying objective reasonableness to excessive use of force claim brought by civilly committed detainee); *Rushing*, 2009 WL 4825196, at *5-6 (applying objective reasonableness to excessive use of force claim brought by SORTS detainee).

In *Chambers v. Pennycook*, the Eighth Circuit recognized that official conduct that causes only *de minimis* injury could constitute excessive force under the Fourth Amendment.   641 F.3d 898, 906 (8th Cir. 2011).   The Court explained that "[t]he degree of injury should not be dispositive, because the nature of the force applied cannot be correlated perfectly with the type of injury inflicted."  *Id*.   Nevertheless, "[t]he degree of injury is certainly relevant insofar as it tends to show the amount and type of force used," and "it remains firmly established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Id*. at 906–07 (citation omitted).

Correctional officers can be liable for a failure to intervene and protect a detainee if they observe the use of excessive force, and had an opportunity to intervene and stop it, but unreasonably failed to do so.  *Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009).

<u>Qualified Immunity</u>

Defendants claim they are entitled to qualified immunity with respect to Plaintiff's federal claims of excessive force and failure to intervene. Under Eighth Circuit law, "[q]ualified immunity protects government officials performing discretionary functions from liability for damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The court employs a two-part inquiry "to determine whether a lawsuit against a public official alleging a constitutional violation can proceed in the face of an assertion of qualified immunity." *Serna v. Goodno*, 567 F.3d 944, 951 (8th Cir. 2009). Courts are to "consider whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 951-52 (citation omitted). Further, courts ask whether the right was clearly established. *Id.* at 952. "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout*, 583 F.3d at 564.

Having reviewed the record, including the video surveillance images of various incidents, and taking the facts in the light most favorable to Plaintiff, the Court concludes that all Defendants involved in the October 8, 2010 incident are entitled to summary judgment based on qualified immunity. Taking the facts in Plaintiff's favor, the record establishes that no force was applied until Plaintiff refused to comply with the order to go to seclusion and escalated the situation by physically resisting efforts to take him there. This, together with the fact that no substantial injuries were alleged as a result of this

encounter, leads the Court to conclude that no reasonable officer in the position of the involved Defendants would have known that under the circumstances, the use of force was not justified or that the amount of force exerted was not reasonable.

The Court shall also grant summary judgment to Knox, the only Defendant involved in the December 29, 2009 incident. Knox's only challenged action is that she allegedly intentionally tripped Plaintiff as he was walking down the hallway, and Plaintiff's alleged injuries from this were not serious. *See Chambers*, 641 F.3d at 906-07 (holding that "it remains firmly established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." ).

A closer question is presented with respect to the April 20, 2010 incident in which Plaintiff refused to comply with the order to return the possibly contaminated grapes and prevented entry into his room. But here, too, the Court concludes that even taking the facts in the light most favorable to Plaintiff, the record establishes that no reasonable officer in the position of the involved Defendants would have known that under the circumstances, the use of force was not justified or that the amount of force exerted was not reasonable. As with the October 8, 2010 incident, the record establishes that no force was applied until Plaintiff refused to comply with a direct order and physically resisted the efforts to make him do so. In addition, Plaintiff's injuries from this incident were not substantial.

But the facts as set forth above show material factual disputes that would preclude the grant of qualified immunity as to the other six incidents. In these incidents there are

factual issues as to what transpired, and/or there is a factual dispute regarding whether a reasonable officer would have known that the force exerted was not reasonable under the circumstances.   In the March 31, 2011 incident, there is a dispute as to whether Plaintiff lunged at Reed, or whether Plaintiff was only trying to throw a remote against a wall.   In the November 11, 2009 incident, there is a factual dispute at to whether the Defendants involved dragged or escorted Plaintiff down the hallway.   And in the October 27, 2011 incident, material factual questions remain as to whether Plaintiff "tackled" Jones or if rather Plaintiff pushed him aside after Jones blocked his path, and whether the force used against Petitioner was reasonably necessary to achieve legitimate institutional interest.

With respect to the October 10, 2010 incident, even under Defendants' version, it is not clear whether there was any reason for the Defendants involved to accost Plaintiff (as the video shows) once he was in the seclusion room.   Similarly, it is not clear from the record now before the Court whether the force exerted in the November 15, 2008 incident to conduct a search for a cup of Vaseline would have been considered reasonable by officers in the position of the Defendants who were involved.   And with respect to the May 11, 2011 incident, when Plaintiff went behind the nurses' station, there remain questions for the jury as to what transpired and as to the reasonableness of the degree of force used.   *See Smith v. Copeland*, 892 F. Supp. 1218 (E.D. Mo. 1995) (finding summary judgment was inappropriate on the basis of qualified immunity where there were disputes as to the facts surrounding the use of force); *Ingrassia v. Blake*, No. 4:12CV257 JCH, 2014 WL 4627182, at *5 (E.D. Mo. Sept. 15, 2014) (denying qualified immunity where the facts taken in the light most favorable to the plaintiff showed a constitutional right had been

violated).

Summary judgment is also inappropriate as to Count II against those remaining Defendants other than Englehart and Portel, who allegedly stood by and did not prevent the alleged use of excessive force in the six above incidents. *See Raney v. Crawford*, No. 4:07CV1150 CDP, 2008 WL 4890576, at *4 (E.D. Mo. Nov. 12, 2008) (denying summary judgment on failure to intervene claim where questions of fact remained as to excessive use of force claim). The fact that Plaintiff cannot, at this point, specify which Defendant did what in some of the actionable incidents does not defeat his claims against those Defendants who were undisputedly present and involved in some way.

Portel, however, who is named in Count II, had no direct involvement in the November 11, 2009 incident, other than calling a supervisor for direction after Plaintiff refused a pat-down search. Even if the search was not warranted and other Defendants later applied excessive force to implement the search, Portel's actions do not subject her to liability under § 1983. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights.").

Likewise, Englehart, who is also named in Count II, is entitled to summary judgment with respect to the excessive force claims because he was not present during any of the incidents, and the only asserted ground for his liability is that he instituted the behavioral plan and authorized some of the restraints. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (holding that claim is not cognizable under § 1983 where plaintiff

fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff).

**State Law Claims**

Preliminarily, Defendants argue that the Court should decline to take supplemental jurisdiction over Plaintiff's state law claims if summary judgment is granted on Plaintiff's federal law claims. Defendants further argue that they are empowered with maintaining the peace and security of the SORTS facility pursuant to Mo. Rev. Stat. § 630.175, which authorizes the use of "physical restraint" that is "imminently necessary to protect the health and safety of the patient, resident, client or others." They argue that they therefore should not be liable for assault or battery because they used force reasonably necessary to maintain order.

Plaintiff argues that Defendants' use of force was excessive and unreasonable because it was not necessary and that therefore Mo. Rev. Stat. § 630.175 does not shield them from liability for assault and battery. As an example, Plaintiff points to the May 11, 2011 incident in which he alleges he was punched in the face and had his face banged on the floor by one Defendant while being held down by three other Defendants and that this force was not for the purpose of maintaining the peace and security of the SORTS facility.

Under Missouri law, "[a]n assault is any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under the circumstances creating a fear of imminent peril." *Armoneit v. Ezell*, 59 S.W.3d 628, 632 (Mo. Ct. App. 1961) (citation omitted). "The assault is complete if the intent, with the present means of carrying it into effect, exists and preparations therefor have been made…even though there

has been no actual violence to the person." *Id.* (citation omitted). "A battery is the willful touching of the person of another, and has been said to be the consummation of the assault." *Id.* (internal citation omitted). Every battery contains an assault. *Id.*

The Count III Defendants claim they are entitled to immunity as to Plaintiff's state law claims pursuant to the doctrine of official immunity and the public duty doctrine. Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). "In Missouri, public officials exercising discretionary duties, as opposed to ministerial duties, are entitled to official immunity from suit for all discretionary acts' unless the officials acted in bad faith or with malice, which ordinarily requires actual intent to cause injury." *Austell v. Sprenger*, 690 F.3d 929, 938 (8th Cir. 2012). "Whether an act can be characterized as discretionary depends on the degree of reason and judgment required." *Southers*, 263 S.W.3d at 610. A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued. *Id.* However, "[e]ven a discretionary act . . . will not be protected by official immunity if the conduct is willfully wrong or done with malice or corruption." *Id.*

Missouri's "public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers*, 263 S.W.3d at 611. "This public duty rule is based on the absence of a duty to the particular individual, as contrasted to the duty owed to the general public." *Id.*

Similar to official immunity, "the public duty doctrine will not apply where defendant public employees act in bad faith or with malice." *Id.* (citation omitted).

For the reasons discussed above, questions of fact remain as to whether each instance of contact by the remaining Count III Defendants, other than Knox and Chamberlain, was unlawful as an excessive use of force or an attempt to injure Plaintiff. Moreover, although the actions were discretionary, the material factual disputes as to whether the conduct was willfully wrong, or done with malice or corruption, preclude the entry of summary judgment on the basis of state official immunity or the public duty doctrine as to these Defendants. *See Gohn v. Hill*, No. 4:09CV0769 JCH, 2011 WL 310241, at *5 (E.D. Mo. Jan 28, 2011) (denying summary judgment based on official immunity and Missouri's public duty doctrine where the plaintiff alleged that defendant police officer committed assault and battery which could constitute bad faith or malice) (citing cases).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED** with respect to the incidents of December 29, 2009, April 20, 2010, and October 8, 2010. Summary judgement is also granted in favor of Defendants Portel and Englehart. The motion is **DENIED** with respect to all remaining incidents and Defendants in accordance with the above discussion. (Doc. No. 83.)

**IT IS FURTHER ORDERED** that a trial date will be set by separate order.

**IT IS FURTHER ORDERED** that counsel will be appointed for Plaintiff for the purposes of conducting trial.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2014